## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NANCY S.,[1] | ) | 3:22-CV-00100 (SVN) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, COMMISIONER | ) | |
| OF SOCIAL SECURITY, | ) | March 24, 2023 |
| *Defendant.* | ) | |

### DECISION AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM

Sarala V. Nagala, United States District Judge.

Plaintiff Nancy S. brought this suit pursuant to 42 U.S.C. § 405(g), to appeal the decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying her claim for Supplemental Security Income ("SSI"). Plaintiff filed a Motion for an Order Reversing the Decision of the Commissioner or, in the alternative, a Motion for Remand for Another Hearing. ECF No. 12. Defendant cross-moved for an Order Affirming the Commissioner's Decision. ECF No. 17. For the reasons outlined below, the Court GRANTS IN PART Plaintiff's motion and DENIES Defendant's motion.

### I.        FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a woman in her mid-fifties who seeks SSI based on a "combination of arthritis and osteoporosis, causing her severe and chronic back pain with radiation down her legs" as well as "ongoing pain and dysfunction" from a tibia-fibula fracture sustained in 2018. ECF No. 12 at

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

10.  The parties generally agree on Plaintiff's medical history and the Court will recount only the portions of that history that are relevant to the presently pending motions.

In May of 2018, Plaintiff had an appointment with Dr. Koh at a community health center to establish care.  ECF No. 12-1 ¶ 1.  She brought a large binder of medical documents discussing her prior medical history.  *Id.*  Those documents indicated that she had chronic lumbar back pain that radiates down her legs.  *Id.*  The pain began after Plaintiff was involved in a motor vehicle accident in April 2015 and, despite years of physical therapy and chiropractic treatment, she had been unable to ease the pain.  *Id.*  A little less than a week later, Plaintiff had another appointment with Dr. Koh; this time, she actively complained of lower back pain that would not go away with the treatments she tried.  *Id.* ¶ 2.  Two days later, Plaintiff had a third appointment with Dr. Koh regarding the same issues.  *Id.* ¶ 3.

On May 10, 2018, Plaintiff filed an application for SSI, claiming that she was disabled beginning October 1, 2017.  Transcript ("Tr."), ECF No. 8 at 12.  In July of 2018, state agency reviewers provided both medical and psychological evaluations of Plaintiff and determined that Plaintiff had no psychological issues.  ECF No. 12-1 ¶ 5.  They further determined that Plaintiff can occasionally lift twenty pounds, frequently lift ten pounds, frequently climb ramps, stairs, ladders, ropes, and scaffolds, and can occasionally stoop, kneel, crouch, and crawl, and has no manipulative, visual, communicative, or environmental limitations.  *Id.*  Plaintiff's claim was denied on August 2, 2018.  Tr. at 12.

In October 2018, after the state agency reviewers had already given their opinion, Plaintiff was in a scooter accident.  ECF No. 12-1 ¶ 7.  As a result of this accident, she suffered a spiral fracture of the distal tibia and fibula.  *Id.*

Plaintiff's claim for SSI benefits was denied upon reconsideration on December 19, 2018. Tr. at 12.  In June 2019, Plaintiff had a bone density test which showed that she has osteoporosis in the lumbar spine and femoral neck bone.  ECF No. 12-1 ¶ 20.  This information indicates that there is an 18% chance Plaintiff will suffer a fracture in her spine, forearm, hip, or shoulder in the next ten years.  *Id.*

On May 20, 2019, Plaintiff requested a hearing on her claim before an administrative law judge ("ALJ"), which hearing was held before ALJ Eskunder Boyd on September 30, 2020.  Tr. at 12.  In November 2020, Dr. Koh completed a medical source statement.  Dr. Koh determined that Plaintiff can sit for six hours a day, and stand/walk for one hour each per day.  ECF No. 12-1 ¶ 28.  In addition to her medical issues, Plaintiff has no past relevant work history and has not had substantial gainful activity ("SGA") in the last fifteen years.  Tr. at 18.

After the hearing, Plaintiff's claim was once again denied, based on a finding that she was not disabled under section 1614(a)(3)(A) of the Social Security Act.  Tr. at 19.  Specifically, the ALJ found that: (1) Plaintiff was not engaged in SGA; (2) the Plaintiff has multiple severe impairments significantly limiting her ability to perform basic work activities; (3) these impairments do not however meet or medically equal any of those listed in 20 C.F.R. 404, Subpart P. Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926); (4) that, with certain exceptions, Plaintiff has the capacity to perform light work as defined in 20 C.F.R. 416.967(b); and (5) that jobs exist in sufficient numbers for Plaintiff to obtain SGA.

Plaintiff's request for review to the Appeals Council was denied, *id* at 1, and this lawsuit followed.  *See* ECF No. 1.  The sole question presented by Plaintiff in the instant action is whether the ALJ erred in his determination that she is not disabled under the Social Security Act.

## II.     LEGAL STANDARD

SSI is "designed to assist aged, disabled and blind persons by setting a minimum guaranteed income for such persons." *New York v. Sebelius*, No. 1:07-CV-1003 (GLS/DRH), 2009 WL 1834599, at *1 (N.D.N.Y. June 22, 2009); *see also* 42 U.S.C. § 1381.  A person is "disabled" and entitled to SSI if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id*. § 1382c(a)(3)(D).  In addition, a claimant must establish that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 1382c(a)(3)(B).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Social Security Act's definition of disability.  *See* 20 C.F.R. § 416.920.  The five steps are best summarized as: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has 'a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909 or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment 'meets or equals' an impairment listed in Appendix 1

of the regulations; (4) if the claimant does not establish the 'meets or equals' requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform her past relevant work; and (5) if the claimant is unable to perform her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform in light of her RFC and her education, age, and work experience. *See Meade v. Kijakazi*, No. 3:20-CV-00868 (KAD), 2021 WL 4810604, at *1 (D. Conn. Oct. 15, 2021); *see also* 20 C.F.R. §§ 416.920(a)(4)(i)–(v), 416.909. The claimant bears the burden of proof with respect to steps one through four, while the Commissioner bears the burden of proof for step five. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotations marks and citation omitted).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quotation marks and citation omitted). "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage*, 692 F.3d at 122, and reject the Commissioner's findings

of fact only "if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (internal citation omitted) (emphasis in original). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

### III.   DISCUSSION

In her motion, Plaintiff asserts fundamentally that she is disabled and the ALJ was incorrect in determining otherwise.[2]  Specifically, Plaintiff asserts the ALJ erred in two distinct ways, both of which go to the ALJ's determination of the fourth factor in the analysis, calculating the Plaintiff's RFC.  First, she argues the ALJ erred in his weighing of the opinion evidence presented by assorted medical professionals.  Second, Plaintiff contends the ALJ erred in his residual functional capacity ("RFC") determination, and subsequent "grid" evaluation.  The Court will address each of the contentions below.  The Court has reviewed the entirety of the medical record and cites to representative examples of evidence in the record, where necessary, to explain its decision.

### A.   The ALJ's Determination of Opinion Evidence Fails to Comply with the Regulations

Plaintiff first contends that the ALJ erred in finding the opinions of both Plaintiff's treating physician and the state agency reviewers to be of equal weight.  Plaintiff contends that, under the "treating physician rule," the ALJ should have given greater deference to the opinion of Plaintiff's physician.  In making this argument, however, Plaintiff has cited outdated case law applying an

---

[2] Plaintiff posits the Court is to consider four factors when determining whether a person qualifies as disabled:  (1) the objective medical facts and clinical findings; (2) expert medical opinions; (3) the subjective evidence of pain and disability as testified to by the claimant; and (4) the claimant's age, education, and work history.  ECF No. 12-2 at 6–7, citing *Gold v. Sec'y of Health, Ed. & Welfare*, 463 F.2d 38, 41 n. 2 (2d Cir. 1972).  While these factors may be relevant, they are taken from caselaw that predates the current five-step test and are thus not the correct standard for determining whether a claimant is disabled.  *Compare Gold*, 463 F.2d 38, 41 n. 2 *with* 20 C.F.R. § 416.920.  The Court will therefore consider this appeal under the appropriate five-step test.

old regulatory scheme that is no longer applicable; the applicable regulations no longer require the ALJ to give opinions of treating physicians any specific evidentiary weight, including controlling weight. *Roxanne C. v. Kijakazi*, No. 3:21-CV-172 (SVN), 2022 WL 4285695, at *6 (D. Conn. Sept. 16, 2022) (internal citations omitted)[3]; S*ee also* 20 C.F.R. § 416.920c (making all claims filed after March 27, 2017, subject to the new regulations). Plaintiff's claim was filed on May 10, 2018. Therefore, as Defendant points out, the appropriate regulation for the ALJ's consideration is 20 C.F.R. § 416.920c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." Under that newer regulation, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including from the claimant's medical sources. 20 C.F.R. § 416.920c(a). Instead, the regulation lists several factors relevant to the consideration of all medical opinions; the most important of these factors being supportability and consistency. *Id*. § 416.920c(b)(2). As these are the most important factors, the ALJ is required to explain how he considered each of these factors for every medical opinion. *Id*.[4] When considering the supportability of an opinion, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions . . . the more persuasive the medical opinion" will be. *Id.* § 416.920c(c)(1). As for consistency, "the more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)" will be. *Id.* § 416.920c(c)(2).

---

[3] The Court feels compelled to mention that, since the briefs in the present action were submitted, Plaintiff's counsel has been informed at least twice that the treating physician rule is no longer good law. *See Roxanne C.*, 2022 WL 4285695, at *6; *Verna M. v. Kijakazi*, No. 3:21-CV-1590 (MPS) (RMS), 2022 WL 17251764, at *8 (D. Conn. Nov. 28, 2022). The Court trusts that Plaintiff's counsel is now aware of the change in the law and will adjust her litigation strategies appropriately going forward.

[4] The ALJ also considers, and may but need not specifically discuss, the medical provider's relationship with the claimant, the medical professional's specialization, and other factors, such as evidence showing that a medical source has familiarity with the other evidence in a claim or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* § 416.920c(c)(3)-(5).

As district courts in this circuit have noted, "[a]t their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, pointing to specific evidence in the record supporting those findings." *Briane S. v. Comm'r of Soc. Sec.*, No. 19-cv-1718-FPG, 2021 WL 856909, at *4 (W.D.N.Y. Mar. 8, 2021) (quoting *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021)). "Eschewing rote analysis and conclusory explanations, the ALJ must discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (internal quotation marks, citation, and punctuation omitted). Where an ALJ fails to "explain how it considered the supportability and consistency of medical opinions in the record," he has committed a procedural error which generally requires remand for further factual findings. *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).[5]

Here, although Plaintiff does not expressly argue as much, the ALJ's decision fails to adequately discuss the supportability and consistency of the medical opinion of Dr. Koh. The ALJ rejected Dr. Koh's assessment that Plaintiff could walk for only one hour and stand for only two hours during a standard eight-hour day. Tr. at 23. In reaching this result however, the ALJ provided only two sentences of analysis, finding "the indication that the claimant can only walk for 1 hour and stand for 2 hours does not accord with the clinical findings for 5/5 strength and the claimant having full gait. The stand walk limitations provided by Dr. Koh also appear inconsistent

---

[5] The Court notes that while the *Loucks* court cited only those regulations related to disability insurance benefits and not those applicable to supplemental security income, the plaintiff in that matter had in fact applied for both disability insurance benefits and supplemental security income. *See Loucks*, 2022 WL 2189293 at *1. Furthermore, the regulations are identical in all material respects such that the Court can see no reason why the analysis in *Loucks* does not apply with equal force to both sets of regulations. *See Kohler v. Astrue*, 546 F.3d 260, 265 n.4 (2d Cir. 2008) ("The regulations applicable to claims for SSI benefits parallel the regulations applicable to claims for SSDI benefits.").

with the overall extent of the claimant's treatment and the lack of evidence for the regular use of an assistive device." *Id.* This analysis fails to appropriately consider either the supportability or consistency of the opinion.

### 1. Supportability

Turning first to the supportability analysis, the ALJ's decision makes no attempt to adequately analyze the medical evidence and supporting explanation. Instead, the decision simply states the findings in the opinion do "not accord with the clinical findings for 5/5 strength and the claimant having full gait." *Id.* The regulations require more than such a conclusory assertion. *See Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *6 (D. Conn. June 21, 2022) (conclusory assertions insufficient to satisfy the requirements of section 416.920c). From the ALJ's decision, it is unclear to the Court how findings of 5/5 strength and full gait undermine Dr. Koh's assertion that Plaintiff was unable to walk for more than one hour or stand for more than two. The fact that Plaintiff has a normal gait during an office visit with a doctor says nothing about how long she is able to maintain such a gait and may be entirely consistent with a finding that she can only walk for one hour per day. *See Ahmed A. J. v. Saul,* No. 3:18-CV-00197, 2019 WL 4671513, at *6 (N.D.N.Y. Sept. 25, 2019) (discussing that a doctor's finding the plaintiff had a normal gait was not necessarily inconsistent with a finding that the plaintiff could not stand or walk more than two hours per day). Thus, without further explanation as to why the ALJ believes this finding fails to support Dr. Koh's opinion, it seems entirely possible to the Court that Plaintiff is capable of walking, with a normal gait, for only one hour per day as Dr. Koh's opinion states. Indeed, Dr. Koh's opinion notes that Plaintiff suffers from lumbar disc herniation and an ankle fracture in October of 2018, Tr. at 1263; the ALJ's opinion fails to address these findings, which appear to support Dr. Koh's opinion about the limitations on Plaintiff's ability to walk.

Similarly, a finding that the Plaintiff had good strength during an emergency room visit in which she complained of pain radiating from her buttocks down her leg does not disqualify her from being unable to stand more than two hours a day.  This is particularly true when considering the strength finding related to her "bilateral upper and lower extremities."  Tr. at 686.  The strength finding is not necessarily inconsistent with the standing and walking limitations Dr. Koh found.  At a minimum, Plaintiff is entitled to a more robust explanation as to why this strength score negatively impacted the supportability of Dr. Koh's opinion.

## 2. Consistency

The ALJ also failed to adequately describe why he believed Dr. Koh's opinion was inconsistent with the record.  Instead, the ALJ simply stated "the stand walk limitations provided by Dr. Koh also appear inconsistent with the overall extent of the claimant's treatment and the lack of evidence for the regular use of an assistive device."  Tr. at 23.  When examining the consistency factor, "while an ALJ is entitled to reconcile conflicting evidence in the record, and need not address every last piece of medical evidence, the ALJ must provide a reviewing Court with a sufficient explanation to ensure that they have complied with the legal procedures controlling their decision."  *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *15 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (KMW) (KHP), 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

The conclusory statements of the ALJ fail to do this.  The ALJ's opinion provides the Court no information as to what the ALJ believed was inconsistent with Dr. Koh's findings, and thus fails to satisfy the requirements of the regulations.  *See Loucks,* 2022 WL 2189293, at *2 (single sentence generally stating that an opinion is inconsistent with the medical record does not satisfy

the regulations); *Santiago v. Kijakazi*, No. 3:21-CV-01422 (VAB), 2023 WL 2072564, at *13 (D. Conn. Feb. 17, 2023) ("a conclusory statement that the opinion is or is not consistent with the "evidence as a whole" does not provide the reviewing court with enough information to determine if the underlying reasoning was proper."); *Verna M.*, 2022 WL 17251764, at *12 (same).

Indeed, the ALJ points to only a single specific inconsistency he considered, and the Court is unconvinced it is in fact an inconsistency. The ALJ found that Plaintiff's lack of use of an assistive device to ambulate was inconsistent with a finding that she could stand for only a limited period of time. Without further explanation of why this information is inconsistent, the Court is not able to adequately determine whether the ALJ's findings are supported by substantial evidence. This is because the medical opinion of Dr. Koh provides time limitations on Plaintiff's ability to stand and walk. It does not say that she is completely unable to do those things for any period of time without an assistive device. It is entirely possible that Plaintiff is able to ambulate effectively without an assistive device for a limited time. It is also possible that Plaintiff's lack of use of an assistive device could make Dr. Koh's recommendation inconsistent with the record. There is simply not enough explanation of why the ALJ found this information inconsistent to allow the Court to adequately review the decision at this time.

Finally, the Court cannot conclude that this error is harmless. *See Loucks*, 2022 WL 2189293, at *2. An error is harmless "where application of the correct legal principles to the record could lead [only to the same] conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alterations in original). Here, as described above, that is not the case. This is particularly true in light of the fact that the ALJ relied only on snippets of information obtained only while Plaintiff was physically present at medical offices. Tr. at 23. Just as in *Loucks*, here the ALJ's focus exclusively on Plaintiff's condition during a medical exam fails to account for her capabilities, or

11

lack thereof, outside of such a setting.  2022 WL 2189293 at * 2.  The Court believes that upon properly applying the updated regulations, and examining both the supportability and consistency of Dr. Koh's opinion, the ALJ could well find it more persuasive.  As application of the correct legal principles could not "lead only to the same conclusion," the ALJ's error was not harmless. *Zabala*, 595 F.3d at 409.

As the ALJ failed to properly apply the regulations, and this failure was not harmless, there has been an error in applying the applicable law that warrants remand.  *See Loucks,* 2022 WL 2189293, at *2.[6]

## IV.    CONCLUSION

For the reasons described herein, Plaintiff's Motion For Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing (ECF No. 12) is hereby GRANTED IN PART AND DENIED IN PART.  Specifically, it is denied insofar as it seeks an order reversing the Commissioner's decision and granted insofar as it seeks remand to the agency. Defendant's Motion for an Order Affirming the Commissioner's Decision (ECF No. 17) is hereby DENIED.  This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

**SO ORDERED** at Hartford, Connecticut, this 24th day of March, 2023.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

---

[6] Defendant concedes that Plaintiff's second argument, that the ALJ improperly calculated her RFC, depends in large part on the success of her first argument.  ECF No. 17 at 9.  As the Court has determined that Plaintiff's first argument requires remand for the ALJ to further articulate his findings related to the supportability and consistency of the medical opinion of Dr. Koh, the Court need not, and truly cannot, address Plaintiff's second argument at this time.